NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNIVERSITY SPINE CENTER,<br><br>Plaintiff,<br><br>v.<br><br>AETNA, INC.,<br><br>Defendant. | Civil Action No.: 2:17-cv-08274<br><br>**OPINION** |

**CECCHI, District Judge.**

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant Aetna, Inc. ("Defendant") to dismiss Plaintiff University Spine Center's ("Plaintiff") complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 6). The Court has given careful consideration to the submissions from each party. Pursuant to Fed. R. Civ. P. 78(b), no oral argument was heard. For the reasons that follow, Defendant's motion to dismiss is granted.

## II. BACKGROUND

On September 30, 2016, Plaintiff performed "a cervical laminectomy and foraminotomy at C3-C4 and a posterior cervical laminectomy at C6-C7" on Jolette M., ("Patient"), who is insured by Defendant. (ECF No. 1 ¶¶ 3, 5). "Plaintiff obtained an assignment of benefits from Patient enabling Plaintiff to bring this action under the Employee Retirement Income Security Act of 1974 . . . ("ERISA")." (*Id.* ¶ 6). "Plaintiff prepared Health Insurance Claim Forms . . . formally demanding reimbursement in the amount of $197,122.00 from Defendant[.]" (*Id.* ¶ 7). "Defendant, however, only allowed reimbursement totaling $2,801.95[.]" (*Id.* ¶ 8). "Plaintiff engaged in the applicable administrative appeals process maintained by Defendant . . . . [but] Defendant failed to remit additional payment in response to Plaintiffs appeal[.]" (*Id.* ¶¶ 9, 11).

On October 13, 2017, Plaintiff filed a complaint against Defendant alleging: (1) failure to make all payments pursuant to a member's plan under ERISA, 29 U.S.C. § 1132(a)(1)(B); and (2) breach of fiduciary duty under ERISA, 29 U.S.C. § 1132(a)(3), 29 U.S.C. § 1104(a)(1), and 29 U.S.C. § 1105(a). (*Id.* ¶¶ 15-32). Plaintiff purports that it has been underpaid in the amount of $194,320.05, which allegedly "[t]ak[es] into account any known deductions, copayments[,] and coinsurance[.]" (*Id.* ¶ 13). On November 29, 2017, Defendant filed a motion to dismiss, which is now before the Court. (ECF No. 6).

## III.   LEGAL STANDARD

"Pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must dismiss a complaint if it lacks subject matter jurisdiction." *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-13654, 2018 WL 1757027, at *1 (D.N.J. Apr. 12, 2018), *appeal filed*, No. 18-1921 (3d Cir. Apr. 25, 2018). "Ordinarily, Rule 12(b)(1) governs motions to dismiss for lack of standing, as standing is a jurisdictional matter." *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 n.3 (3d Cir. 2015). "However, when statutory limitations to sue are non-jurisdictional, as is the case where a party claims derivative standing to sue under ERISA § 502(a), a motion to dismiss challenging such standing is 'properly filed under Rule 12(b)(6).'" *Univ. Spine Ctr.*, 2018 WL 1757027, at *1 (quoting *N. Jersey Brain*, 801 F.3d at 371 n.3). "Regardless, 'a motion for lack of statutory standing is effectively the same whether it comes under Rule 12(b)(1) or 12(b)(6).'" *Id.* (quoting *N. Jersey Brain*, 801 F.3d at 371 n.3).

"On a motion to dismiss for lack of standing, the plaintiff 'bears the burden of establishing' the elements of standing, and 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation.'" *Id.* (quoting *FOCUS v.*

*Allegheny Cty. Court of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996)). "For the purpose of determining standing, [the Court] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the complaining party." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003).

## IV. DISCUSSION

"Under § 502(a) of ERISA, 'a participant or beneficiary' may bring a civil action to, *inter alia*, 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Univ. Spine Ctr.*, 2018 WL 1757027, at *2 (quoting 29 U.S.C. § 1132(a)). "Accordingly, standing to sue under ERISA is 'limited to participants and beneficiaries.'" *Id.* (quoting *Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400-01 (3d Cir. 2004)). "As ERISA is silent on the issue of standing, Third Circuit precedent sets forth that a healthcare provider may bring a cause of action by acquiring derivative standing through an assignment of rights from the plan participant or beneficiary to the healthcare provider." *Id.* "Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary." *N. Jersey Brain*, 801 F.3d at 372.

Consequently, the question at issue in this matter is whether Patient executed a valid assignment of benefits consistent with the provisions of Patient's insurance policy. Defendant contends that any assignment of benefits "is not valid" because "[P]atient's health benefit plan expressly precludes an assignment of benefits." (ECF No. 6-1 at 4-5). There appears to be no

dispute that Patient's insurance policy's anti-assignment provision reads: "All coverage may be assigned only with the written consent of **Aetna**." (ECF No. 6-4 at 81).[1]

In response, Plaintiff argues that it has standing to pursue its claims against Defendant because, while the anti-assignment provision may have restricted Patient's *right* to assign his benefits, the anti-assignment provision did not affect Patient's *power* to assign his benefits. (ECF No. 8 at 6). In other words, Plaintiff avers that, although Patient may have breached a covenant not to assign his benefits under Patient's insurance policy, the appropriate remedy is not to void the assignment, but rather to award Defendant damages. (*Id.*). In order for Patient's assignment of benefits to be found invalid, Plaintiff asserts that Patient's insurance policy must have contained specific language "that nonconforming assignments (i) shall be 'void' or 'invalid,' or (ii) that the assignee shall acquire no rights or the nonassigning party shall not recognize any such assignment.'" (*Id.* at 7 (citations omitted)). In support of its position, Plaintiff cites to a Third Circuit case that neither addresses ERISA claims nor applies federal law. *See generally Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435 (3d Cir. 1999) (applying, New Jersey state law).

Plaintiff also argues that the anti-assignment provision is inapplicable to Plaintiff because Plaintiff is a provider of the very services that Patient's insurance policy is maintained to cover. (ECF No. 8 at 11-13). In defense of its argument, Plaintiff points to *Hermann Hospital v. MEBA*

---

[1] Plaintiff does not include a copy of Patient's insurance policy as an attachment to its complaint. On a motion to dismiss, however, the Court may consider the allegations in the complaint, any exhibits attached to the complaint, matters of public record, and undisputedly authentic documents upon which the plaintiff's complaint is based. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A document falls into the latter category even where the complaint does not cite or "explicitly rely[]" on it; "[r]ather, the essential requirement is that the plaintiff's claim be 'based on that document.'" *Brusco v. Harleysville Ins. Co.*, No. 14-914, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Here, Plaintiff's complaint explicitly relies on Patient's insurance policy. (ECF No. 1). As such, the Court will properly consider Patient's insurance policy with Defendant's motion to dismiss.

*Medical & Benefits Plan*, 959 F.2d 569 (5th Cir. 1992), *overruled on other grounds by Access Mediquip, L.L.C. v. UnitedHealthcare Ins. Co.*, 698 F.3d 229 (5th Cir. 2012), a "Fifth Circuit decision [which] interpreted anti-assignment clauses, such as the one at issue here, to apply only to third-party assignees who may obtain assignments to cover unrelated debts." *Univ. Spine Ctr.*, 2018 WL 1757027, at *2 (citing *Hermann Hospital*, 959 F.2d at 575).

"The Court rejects both of Plaintiff's arguments because they are contrary to the recognized law in this district." *Id.* at *3. In a recent Third Circuit decision, the court held that it "now join[s] th[e] consensus and hold[s] that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, No. 17-1663, 2018 WL 2224394, at *6 (3d Cir. May 16, 2018). In fact, "a majority of circuits, as well as courts in the Third Circuit, have given effect to anti-assignment provisions such as the one in this case and denied standing." *Univ. Spine Ctr.*, 2018 WL 1757027, at *3 (citing cases). Indeed, this District has rejected this Plaintiff's exact arguments against various insurance company defendants in other ERISA matters. *See id.*; *see also Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-7825, 2017 WL 6514663, at *2 (D.N.J. Dec. 20, 2017); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-193, 2017 WL 6372238, at *3 (D.N.J. Dec. 12, 2017); *Univ. Spine Ctr. v. Blue Shield of Cal.*, No. 17-8673, 2017 WL 5513688, at *3 (D.N.J. Nov. 16, 2017). Thus, in accordance with the decisions from this District, the Court finds that "a clear and unambiguous anti-assignment clause is enforceable against Plaintiff and will void any purported assignment of Patient's rights or benefits." *Univ. Spine Ctr.*, 2018 WL 1757027, at *3.

Notwithstanding the foregoing, Plaintiff avers that Patient's insurance policy's anti-assignment provision "does not even purport to limit the Patient's ability to give an assignment

of their right to receive reimbursement to an out-of-network provider . . . . [but only limits] the assignment of 'coverage' . . . [in] that the written consent of Aetna need[s to] be obtained." (ECF No. 8 at 9-10).  Essentially, Plaintiff contends that "coverage" is an independent term from "benefits," and "[i]f Aetna intended to prevent the assignment of benefits as well as the assignment of coverage, [it] simply could have written that 'all assignments may be made only with the written consent of Aetna.'" (*Id.* at 10-11).  Defendant, on the other hand, asserts that the terms "coverage" and "benefits" are synonymous. (ECF No. 9 at 4-6).

The Court disagrees with Plaintiff's construction of the anti-assignment provision. Plaintiff cites to no precedent or specific contractual provision in making its distinction between the terms "coverage" and "benefits" and/or "rights."  "The anti-assignment provision is clear on its face and contains specific and express language stating that the health plan's benefits cannot be assigned," and the Court accordingly finds that it is enforceable.  *Kayal Orthopaedic Ctr., P.C. v. Empire Blue Cross Blue Shield*, No. 16-9059, 2017 WL 4179813, at *3 (D.N.J. Sept. 21, 2017); *see also Univ. Spine Ctr. v. Aetna, Inc.*, No.17-7823, 2018 WL 2332226, at *3 (D.N.J. May 23, 2018) (finding an identical anti-assignment provision "to be clear and unambiguous, and thus valid and enforceable"); *Univ. Spine Ctr. v. Aetna, Inc.*, No. 17-8161, 2018 WL 2441764, at *4 (D.N.J. May 31, 2018) (same).  Neither party disputes that Defendant has not consented to the assignment of benefits herein.  Plaintiff therefore lacks a valid assignment upon which to bring its ERISA claims, which accordingly must be dismissed for lack of standing.  *See Univ. Spine Ctr.*, 2018 WL 2441764, at *4; *Univ. Spine Ctr.*, 2018 WL 2332226, at *3 (citing *Neurological Surgery Assocs. P.A. v. Aetna Life Ins. Co.*, No. 12-5600, 2014 WL 2510555, at *4 (D.N.J. June 4, 2014)).

Finally, the Court rejects Plaintiff's contention that "there is no reason that the right to receive benefit payments for services which have already been rendered, and which were due upon the submission of a bill, could not be assigned from one party to another." (ECF No. 8 at 11). As discussed previously, the Third Circuit recently held "that anti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable." *Am. Orthopedic & Sports Med.*, 2018 WL 2224394, at *6. "[C]ourts within this District routinely enforce unambiguous anti-assignment provisions contained in ERISA-governed plans, and thus, find that providers lack derivative standing to seek benefits from the plan on behalf of their patients." *Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *5 (D.N.J. Mar. 22, 2018). Here, the reason Patient's benefits could not be assigned was because Patient's insurance policy contained a valid and enforceable anti-assignment provision. Accordingly, Plaintiff does not have standing to bring this action and Plaintiff's complaint must be dismissed.[2]

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted. To the extent the pleading deficiencies identified by the Court can be cured by way of amendment, Plaintiff is granted thirty (30) days to file an amended pleading. An appropriate Order accompanies this Opinion.

DATED: July 9, 2018

_____
**CLAIRE C. CECCHI, U.S.D.J.**

---

[2] For this reason, the Court need not consider Defendant's remaining arguments in its motion to dismiss.

7